Zheng "Andy" Liu
750 Alma Ln # 8244
Foster City, CA 94404
Telephone: 650.475.6289
Facsimile: 510.987.8411
Email: Andy.liu@aptumlaw.us
*Pro Se*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

ZHENG LIU, an individual,

    Plaintiff,

        v.

MARCUS TERRY, FOSTER CITY
POLICE DEPARTMENT, CITY OF
FOSTER CITY, and DOES 1-20,

    Defendants.

**Case No. 3:21-cv-01179-JSC**

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S VERIFIED
COMPLAINT; MEMORANDUM
OF POINTS AND AUTHORITIES**

## **TABLE OF CONTENTS**

I.   SUMMARY OF ARGUMENTS ........................................................................1

II.  POINTS AND AUTHORITIES ......................................................................1

   A.   Legal Standards.....................................................................................1

   B.   The Verified Complaint Sates Facts Sufficient To State A Claim Under 42 U.S.C. § 1983...........................................................................................................2

     **(a).**   The Verified Complaint sates a 4th Amendment unreasonable search and seizure claim ........................................................................................2

      i)   The Verified Complaint sates a Fourth Amendment unreasonable search claim because Defendant Terry physically intruded into Plaintiff's home............... 2

      ii)   The Verified Complaint sates a Fourth Amendment unreasonable seizure claim because Defendant Terry illegally detained Plaintiff...................................... 3

     **(b).**   The Verified Complaint Sates A Claim For Excessive Force Under Both the Fourteenth Amendment and the Fourth Amendment ................................... 5

      i)   The Verified Complaint sates a Fourteenth Amendment Excessive Force claim because Defendants illegally treated Plaintiff as a pretrial detainee............... 5

      ii)   The Verified Complaint sates a Fourth Amendment Excessive Force claim because Defendant Terry used unreasonable force on Plaintiff under Graham........ 6

   C.   The Verified Complaint sufficiently states both a violation of a constitutional right and a clearly established right and thus Defendants claimed qualified immunity at this pleading stage is unavailing. .......................................................................... 8

   D.   The Verified Complaint States a Municipal Liability claim under 42 U.S.C. § 1983. 9

     **(a).**   The Verified Complaint sates a claim based on the theory of municipal ratification .......................................................................................... 10

     **(b).**   The Verified Complaint sates a claim based on the theory of failure to train .. 11

     **(c).**   The Verified Complaint sates a claim based on the theory of an unconstitutional custom, practice, or policy .......................................................................... 12

   E.   The Verified Complaint Sufficiently States All Its State Law Claims .................. 14

     **(a).**   The Verified Complaint states a civil battery and assault claim....................... 14

i

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

**(b).** The Verified Complaint sates an intentional infliction of emotional distress claim 15

**(c).** The Verified Complaint sates a violation of Bane Act claim ........................... 16

i) The Verified Complaint establishes numerous violations of stator and constitutional rights ................................................................................. 16

ii) The Verified Complaint states numerous threats, intimidations and coercions made by Defendants against Plaintiff ......................................................... 16

**(d).** The Verified Complaint sates a negligent use of force claim ........................... 17

**(e).** The Verified Complaint sates a negligent intentional infliction of emotional distress claim ............................................................................................................ 18

**(f).** The Verified Complaint States a statutory basis for all his State Law claims against the City of Foster City and Foster City Police Department ........................... 18

F. The Verified Complaint states numerous basis for its Punitive Damage Claim ..... 19

G. Amendments are not needed and if needed should be liberally granted ................. 20

**III. CONCLUSION** ............................................................................................................ 21

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF AUTHORITIE**

**Cases**

*Aguilera v. Ducart*, No. 18-cv-03389-HSG, 2019 U.S. Dist. LEXIS 149912, 2019 WL 4168892, at *3 (N.D. Cal. Sept. 3, 2019)................................................................. 8

*Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493, at 496 (1970)........................................... 15

*Bartosh v. Banning*, 251 Cal.App.24 378 (1967) .................................................................. 14

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997)...................... 11

*Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ............................................................................... 5

*Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013)............................................................ 7

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996)...................................... 1

*Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 528-29 (1967)................................................................................................................................... 3

*Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) ..................................................... 2

*Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999) .......................................................... 10

*City of Canton v. Harris*, 489 U.S. 378, 387 (1989)............................................................. 11

*City of Los Angeles, California v. Patel*, 135 S. Ct. 2443, 2452 (2015)................................... 2

*Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) ................................................................. 8

*Dang v. Cross*, 422 F.3d 800, 809 (9th Cir. 2005) ............................................................... 19

*Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).......................................................... 1

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) .......................................................................... 2

*Estrada v. Orwitz*, 75 Ca. App. 2d 54 (1946) ....................................................................... 14

*Florida v. Jardines*, 569 U.S. 1, 6 (2013) .............................................................................. 3

*Fragualia v. Sala*, 17 Cal.App.2d 738, 742 (1936) .............................................................. 14

iii

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

*Garmon v. City of L.A.*, 828 F.3d 837, 846 (9th Cir. 2016)........................................ 2

*Gibson v. County of Washoe*, 290 F.3d 1175, 1194-95 (9th Cir. 2002) .................... 12

*Golden v. Dungan*, 20 Cal.App.3d 295, at 305 (1971) .............................................. 15

*Graham v. Connor*, 490 U.S. 386, 394 (1989) ............................................................ 5

*Griswold v. Hollywood Turf Club*, 106 Cal.App.2d 578 (1951)................................ 14

*Hopkins v. Bonvicino*, 573 F.3d 752, 773 (9th Cir. 2009) .......................................... 4

*Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011)...................... 13

*Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015)...................................................... 5

*Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) ............................ 1

*Liston v. County of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir. 1997)..................... 7

*Long v. County of Los Angeles*, 442 F.3d 1178 (9th Cir. 2005) .............................. 12

*Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000).......................................... 2

*Lopez v. Surchia*, 122 Cal.App.2d 314, 318 (1952)................................................ 14

*Marshall v. Barlow's, Inc.*, 436 U.S. 307, 324 (1978) ............................................. 3

*McChristian v. Popkin*, 75 Cal. App. 2d 249 260 (1946) ........................................ 14

*McLean v. Colf*, 179 Cal. 237 (1918)...................................................................... 14

*Monell v. Department of Social Servs.*, 436 U.S. 658, 690 (1978)......................... 10

*Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993) ................................... 19

*Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999)................................................ 2

*Oliver v. United States*, 466 U.S. 170, 180 (1984) ................................................... 3

*Patel v. City of Montclair*, 798 F.3d 895, 899 (9th Cir. 2015) .................................. 2

*People v. McCoy,* 25 Cal.2d 177, 193 (1944)......................................................... 14

*People v. McMakin,* 8 Cal. 547, 548–549 (1857)................................................... 14

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

*Price v. Cty. of San Diego*, 990 F.Supp. 1230, 1245 (S.D.Cal. 1998)..................................... 18

*Rivera v. County of Los Angeles*, 745 F.3d 384, 389 (9th Cir. 2014)..................................... 10

*Roseville Fullerton Burton Holdings, LLC v. SoCal Wheels, Inc.*, No. 14-cv-01954-JLS

    (JCGx), 2016 U.S. Dist. LEXIS 186049, 2016 WL 6159014, at *9 (C.D. Cal. May 20,

    2016) .......................................................................................................................................... 5

*Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)........................................................... 7

*Saucier v. Katz*, 533 U.S. 194 (2001) .................................................................................. 9

*Shafer v. County of Santa Barbara*, 868 F.3d 1110 (9th Cir. 2018)................................... 8

*Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) .............................................. 7

*Smith v. Wade*, 461 U.S. 30, 56 (1983) ............................................................................ 19

*Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002)...................................................... 1

*United State v. Washington*, 387 F.3d 1060, 1069 (9th Cir. 2004)..................................... 4

*United States v. Jones*, 565 U.S. 400, 406-07 (2012) ......................................................... 3

**Statutes**

Cal. Civ. Code § 3294(a) .................................................................................................... 19

Cal. Civil Code § 52.1........................................................................................................ 17

Cal. Gov. Code § 815.2....................................................................................................... 18

Cal. Gov. Code § 815.4....................................................................................................... 18

Cal. Pen. Code § 242.......................................................................................................... 14

**Treatises**

*Prosser, Law of Torts* (4th ed. 1971), at pp. 57-58 ........................................................... 15

*Rest.2d Torts*, § 46, coms. e, f........................................................................................... 15

v

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   SUMMARY OF ARGUMENTS

Defendants moved under Rule 12(b)(6) to dismiss on largely two grounds.

First, Defendant Terry used reasonable force against Plaintiff. Whether an office used reasonable force or not, however, is a issue for the jury and is thus inappropriate for summary dismissal at this pleading stage.

Second, Defendant Terry's retaliation against Plaintiff was legitimate because the retaliation was carried out under the pretext of a warrant check. This contention runs afoul of the basic principle that, when raising a Rule 12 motion to dismiss, absent certain judicially noticeable facts to the contrary, all allegations made in a complaint must be accepted as true. Further, Plaintiff verified all facts stated in the Verified Complaint; while Defendants presented mere baseless assertions and second-hand hearsays in its motion to dismiss.

Therefore, Defendants' positions are mistaken and should thus be rejected.

### II.   POINTS AND AUTHORITIES

#### A.   Legal Standards

In reviewing a motion to dismiss under Rule 12(b)(6), a court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *See Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

When ruling on a motion to dismiss, a court may consider (1) the facts alleged in the complaint, (2) documents attached to the complaint, (3) documents relied upon but not attached to the complaint when authenticity is not contested, and (4) matters of which this Court takes judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

1

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

A dismissal for failure to state a claim is appropriate only where it appears, beyond doubt, that the plaintiff can prove no set of facts that would entitle him or her to relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999) [citations omitted].

Finally, where, as here, a plaintiff appears pro se in a civil rights suit, a court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Garmon v. City of L.A.*, 828 F.3d 837, 846 (9th Cir. 2016). A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend unless the complaint's deficiencies cannot be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995). "A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[1].'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted). Pro se litigants should be granted leave to amend unless it is absolutely clear that the deficiencies cannot be cured by amendment. *See Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc).

### B. The Verified Complaint Sates Facts Sufficient To State A Claim Under 42 U.S.C. § 1983

#### (a). The Verified Complaint sates a 4th Amendment unreasonable search and seizure claim

##### i) The Verified Complaint sates a Fourth Amendment unreasonable search claim because Defendant Terry physically intruded into Plaintiff's home

As a general rule, a "search" of private property without prior consent or authorization by a valid search warrant is *per se* unreasonable, and may provide a basis for Section 1983 liability. *City of Los Angeles, California v. Patel*, 135 S. Ct. 2443, 2452 (2015) (citations omitted); *Patel v. City of Montclair*, 798 F.3d 895, 899 (9th Cir.

---

[1] Plaintiff is an attorney who has never practiced civil right laws and should thus be treated as a pro se party in this § 1983 action.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

2015) (citing *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 528-29 (1967)), cert. denied; *see also Marshall v. Barlow's, Inc.*, 436 U.S. 307, 324 (1978) (noting "general constitutional requirement that for a search to be reasonable a warrant must be obtained").

A Fourth Amendment search occurs when the government *physically intrudes* upon a constitutionally protected area in order to obtain information. *United States v. Jones*, 565 U.S. 400, 406-07 (2012); *Patel v. City of Montclair*, 798 F.3d at 898 (citing *id.* at 404). Constitutionally protected areas include an individual's "house[]" and "the area 'immediately surrounding and associated with [it]" (*i.e.*, the "curtilage"). *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)).

Here, the Verified Complaint states that "Defendant Marcus Terry suddenly and forcefully pushed open Plaintiff's side door" (Verified Complaint, ⸿ 34) and "physically invaded into [Plaintiff's] backyard—admittedly, without a search[] warrant and without [Plaintiff's] consent" (Verified Complaint, Exhibit B[2], Section C, paragraph ⸿ 3-4). the Verified Complaint further states that "[n]o other exceptions to the warrant requirement existed. There was no imminent danger to any person's life or serious property damage." *Ibid*.

The Verified Complaint thus sufficiently pled a Fourth Amendment unreasonable search claim.

    **ii)    The Verified Complaint sates a Fourth Amendment unreasonable seizure claim because Defendant Terry illegally detained Plaintiff**

A seizure "occurs when a law enforcement officer, through coercion, 'physical force[,] or a show of authority, in some way' . . . communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business."

---

[2] Rule 10(c) states that exhibits attached to a Complaint is part of the Complaint. *See also Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

1   *Hopkins v. Bonvicino*, 573 F.3d 752, 773 (9th Cir. 2009) (quoting *United State v.*

2   *Washington*, 387 F.3d 1060, 1069 (9th Cir. 2004)).

3        Defendants do not genuinely dispute that Defendant Terry detained Plaintiff in his

4   own backyard. All Defendant offered was a one-liner passing sentence, arguing

5   "allegations regarding TERRY's actions are not sufficient to establish that a seizure

6   occurred" (Mot. To Dismiss, at 6, line 28; at 7, line 1). Such superficial, conclusory

7   statement cannot sustain a dismissal.

8        As to the unreasonableness of this detention, Defendants improperly dispute the

9   truth of Plaintiff's verified statements, even though when considering a Rule 12(b)(6)

10  motion to dismiss, "a court must assume the truth of all factual allegations and must

11  construe all inferences all inferences from them in the light most favorable." *Thompson*,

12  at 895.

13       First, Defendants argued that the "alleged detention took place *in public* given

14  TERRY *did not enter LIU's home*" (Mot. To Dismiss, at 6, line 21), even though the

15  Verified Complaint states that the unlawful detention occurred after Defendant "Terry

16  physically invaded into [Plaintiff's] backyard." (Verified Complaint, Exhibit B[3], Section

17  C, paragraph ₱ 3-4).

18       Second, Defendants argued that the Defendant "TERRY only detained him long

19  enough to see his children present at the residence" (Mot. To Dismiss, at 6, line 28; at 7,

20  line 1) and "TERRY's conduct was clearly in the interest of public safety" as part of

21  Defendant Terry's "police community caretaking function (Mot. To Dismiss, at 7, lines

22  5-6 and 13-21), even though the Verified Complaint states that "Defendant Marcus

23  Terry's claimed 911 welfare investigation is a pure pretext" because Defendant Terry

24       1.  "did not make a single phone call to any other person";

25       2.  "did not look into the window of Plaintiff's house to see if anyone else was

26           present and injured or needed help";

27

28

---

[3] Rule 10(c) states that exhibits attached to a Complaint is part of the Complaint.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

3.  "never attempted to talk to anyone else at Plaintiff's residence, let alone investigating their welfare"; and

4.  "never called his own dispatch to understand details Plaintiff provided about the 911 misdial."

(Verified Complaint, ℙ 38).

Thus, Defendants' entire argument about the reasonableness (of lack thereof) of Defendant Terry's detention of Plaintiff should be rejected, because factual disputes cannot be resolved on the pleadings. *Roseville Fullerton Burton Holdings, LLC v. SoCal Wheels, Inc.*, No. 14-cv-01954-JLS (JCGx), 2016 U.S. Dist. LEXIS 186049, 2016 WL 6159014, at *9 (C.D. Cal. May 20, 2016).

### (b). The Verified Complaint Sates A Claim For Excessive Force Under Both the Fourteenth Amendment and the Fourth Amendment

Excessive force claim can be made under the Eighth Amendment[4], the Fourth Amendment, and the Fourteenth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). Pretrial detainees can make excessive force claims under § 1983 because they are protected by the Fourteenth Amendment's guarantee of substantive due process. *See id*. at 395 n.10; *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979). § 1983 claims arising from excessive force during the "arrest, investigatory stop, or other 'seizure' of a free citizen" may be made under the Fourth Amendment. *Id.* at 395.

### i) The Verified Complaint sates a Fourteenth Amendment Excessive Force claim because Defendants illegally treated Plaintiff as a pretrial detainee

Under the Fourteenth Amendment, a plaintiff can show that the force used was objectively unreasonable under the circumstances and that it was not "rationally related to a legitimate nonpunitive governmental purpose" or was "excessive in relation to that purpose." *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015) (citing *Bell*, at 561).

---

[4] Plaintiff did not and does not intent to make an Eighth Amendment excessive force claim.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Here, for the purpose of an excessive force analysis, Plaintiff may be considered a pretrial detainee: Defendant Terry detained Plaintiff (Verified Complaint, ⁋ 64, 65, 80,82, 90, 98, and 112) and "demanded [Plaintiff] step out of his backyard or otherwise risking an arrest" (*id.*, Exhibit B, Section B, ⁋ 1). Foster City Police Department routinely retaliates against its residents by falsely arresting them and prosecuting them in sham criminal trials and proceedings (*id.*, ⁋ 64, after Messrs. Roman and McMillin made excessive force and false arrest claims against the Foster City Police Department, the Foster City Police Department detained, arrested, and prosecuted them in two separate criminal proceedings; *see Roman v. City of Foster City et. al.*, U.S. District Court for the Northern District of California, case no.: 3:21-cv-00901; *see McMillin v. City of Foster City et. al.*, U.S. District Court for the Northern District of California, case no.: 3:11-cv-03201; *McMillin v. Foster City et. al.*, California Court of Appeal case no.: A132043, and San Mateo County Superior Court case no.: civ487543).

Defendants do not challenge the Verified Complaint's sufficiency in pleading an excessive force claim under the Fourteenth Amendment. Instead, Defendants argue that an excessive force claim arose in the context of an investigatory stop would lie *solely* under the Fourth Amendment, while *Graham* states only that such a claim may be more "***properly*** characterized as one invoking the protections of the Fourth Amendment." *Graham* thus does not categorically bar an excessive force claim that arose in the context of an investigatory stop from also being made under the Fourteenth Amendment.

In sum, the Verified Complaint states an excessive force claim under the Fourteenth Amendment, because Plaintiff may be considered a pretrial detainee, in view of the verified statements about Defendants' pattern of falsely initiating pretrial detentions against residents, who, like Plaintiff, complained about Defendants' misconducts.

      **ii)**    **The Verified Complaint sates a Fourth Amendment Excessive Force claim because Defendant Terry used unreasonable force on Plaintiff under Graham**

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

1   A Fourth Amendment excessive force claim requires much less.

2   (A Fourteenth Amendment excessive force claim requires a 'substantially higher

3   showing' than one brought under the Fourth Amendment. *Burgess v. Fischer*, 735 F.3d

4   462, 472 (6th Cir. 2013).)

5   As a threshold matter, a dismissal of Plaintiff's excessive force claim at this

6   pleading stage is inappropriate. Because whether an officer used excessive force "*nearly*

7   *always* requires a jury to sift through disputed factual contentions, and to draw inferences

8   therefrom." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see also Smith v. City of*

9   *Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (observing that excessive force cases "almost

10  always turn on a jury's credibility determinations"). Such summary adjudications as Rule

11  12(b)(6) dismissal, summary judgment, and judgment as a matter of law

12  "in excessive force cases should be granted *sparingly*." *Santos*, 287 F.3d at 853; *see*

13  *also Liston v. County of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir. 1997) ("We have

14  held repeatedly that the reasonableness of force used is ordinarily a *question of fact for*

15  *the jury*," citing cases).

16  More specifically, factors to be considered in a Fourth Amendment excessive-

17  force claims include "severity of the crime at issue, whether the suspect poses an

18  immediate [safety] threat … and whether he is actively resisting arrest or attempting to

19  evade [it] by flight" *Graham*, 490 U.S. at 396.

20  Here, while in "close proximity to Plaintiff" Defendant Terry "suddenly and

21  forcefully pushed open Plaintiff's side door, as Plaintiff was standing behind the side

22  door … almost ***striking the side door*** into Plaintiff's ***face and upper torso***" (Verified

23  Complaint, ⁋ 34-35)—when Plaintiff (1) was not even suspected of, let alone committing

24  any crime, (2) posed no immediate safety threat, and (3) was neither resisting nor evading

25  police by flight (*ibid*).

26  In fact, Plaintiff was retreating into his own house (*id.*, ⁋ 33) and the best excuse

27  Defendant Terry offered after he illegally detained Plaintiff was that he was conducting a

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

1    welfare check on some unidentified party that Defendant Terry did not even was present

2    at Plaintiff's house or not. (*Id.*, ▯ 38)

3         Defendants seem to suggest that Plaintiff's excessive force claim fails because he

4    was never injured by Defendant Terry. But "[a] significant injury is not a threshold

5    requirement for stating an excessive force claim," *Aguilera v. Ducart*, No. 18-cv-03389-

6    HSG, 2019 U.S. Dist. LEXIS 149912, 2019 WL 4168892, at *3 (N.D. Cal. Sept. 3,

7    2019).

8         Further, Defendants cited *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) and

9    *Shafer v. County of Santa Barbara*, 868 F.3d 1110 (9th Cir. 2018) to support the

10   proposition that the use of force in this case was warranted. Those cases are not similar,

11   involving a felony car theft suspect and a violent battery suspect, respectively. In

12   contrast, Plaintiff was suspected of no crime, as conceded by Defendant Terry himself. At

13   most, Defendant Terry's own excuse was that he was checking the welfare of an

14   identified third party that Defendant Terry was not even sure was present at Plaintiff's

15   house at that time. (*Id.*, ▯ 33)

16        Thus, under *Graham*, the Verified Complaint states an excessive force claim

17   under the Fourth Amendment. To the extent that Defendants insist that Plaintiff explicitly

18   plead his excessive force claims under the Fourth Amendment, Plaintiff, a pro se litigant,

19   should be granted leave to amend unless it is absolutely clear that the deficiencies cannot

20   be cured by amendment. *See Lopez*, 1130-1131.

21

22        **C.    The Verified Complaint sufficiently states both a violation of a**
         **constitutional right and a clearly established right and thus**
23       **Defendants claimed qualified immunity at this pleading stage is**
         **unavailing.**

24        As a threshold matter, Defendants qualified immunity argument fails, not only

25   because they are improperly raised at this pleading stage, but also because they are

26   founded upon the incorrect assertions that Plaintiff failed to plead an excessive force

27   claim under both the Fourteenth Amendment and the Fourth Amendment. As explained

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

above, the Verified Complaint states a valid excessive force claim under either the Fourteenth Amendment or the Fourth Amendment.

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth two questions to be considered in determining whether qualified immunity exists. First, a court considers the threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. Second, if a constitutional right was found to be violated, the next step is to ask whether the right was clearly established. *Id.*

First, at this pleading stage, as explained above, the Verified Complaint sufficiently alleges violations of both the Fourteenth Amendment and the Fourth Amendment.

Second, at this pleading stage, the Verified Complaint sufficiently alleges a clearly established right: under *Graham*, excessive force cannot be used on a subject of an investigator stop. Here, Defendant Terry had no right to "suddenly and forcefully pushed open Plaintiff's side door, as Plaintiff was standing behind the side door … *almost striking the side door into Plaintiff's face and upper torso*" (Verified Complaint, ¶ 34-35) when Plaintiff, who was not a target of Defendant Terry claimed welfare check, and when Plaintiff (1) was not even suspected of, let alone having committing, any crime, (2) posed no immediate safety threat, and (3) was neither resisting nor evading police by flight (*ibid*). Put simply, Defendant Terry cannot strike a door into the face and the torso of an innocent bystander to his claimed welfare check.

In sum, at this pleading stage, the Verified Complaint states both a violation of a constitutional right and a clearly established right. A motion to dismiss based on qualified immunity at this pleading stage is inappropriate.

### D.   The Verified Complaint States a Municipal Liability claim under 42 U.S.C. § 1983.

First, as explained above, the Verified Complaint states a valid excessive force claim under either the Fourteenth Amendment or the Fourth Amendment.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Second, Defendants begin to lose credibility when stretching their arguments too far. Defendants argue that a *municipal* liability claim cannot be maintained against a *municipality*. Mot. To Dismiss, at 11, lines 13-17. This argument does not even read, let alone sounding credible. It is beyond dispute that a *local governmental unit* or *municipality* can be sued as a "person" under section 1983. *Monell v. Department of Social Servs.*, 436 U.S. 658, 690 (1978). On a "Monell claim," an individual may prevail in a § 1983 action against "municipalities, including counties and their sheriff's departments," if the "unconstitutional action 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Rivera v. County of Los Angeles*, 745 F.3d 384, 389 (9th Cir. 2014) (quoting *Monell*, 436 U.S. at 690).

### (a). The Verified Complaint sates a claim based on the theory of municipal ratification

A municipality may be held liable for an isolated constitutional violation where the final policy maker ratified a subordinate's actions creating the violation. *Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999).

Here, the policy makers had knowledge of the constitutional violation. After being illegally detained by Defendant Terry, Plaintiff reported this illegal detention (in violation of the Fourth Amendment among others) to the Foster City Police Department by way of a citizen complaint sent to Lieutenant Mark Lee, Captain Martin Ticas, and Police Chief Tracy Avelar. Verified Complaint, Exhibit A.

The policy makers approved the constitutional violation though both inaction and sanction of such illegal activities. After learning Defendant Terry's misconducts, Lieutenant Mark Lee's attempted to force Plaintiff to dismiss the citizen complaint against Defendant Terry (by falsely claiming that Plaintiff's complaint was invalid because it was filed on the wrong stationeries).

Hours after Plaintiff complained about Defendant Terry to Lieutenant Mark Lee, Captain Martin Ticas, and Police Chief Tracy Avelar, three police officers arrived at

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

1   Plaintiff's home to intimate him by conducting a supposed warrant check at Plaintiff's

2   house. Verified Complaint, Verified Complaint, ₧₧ 44-56.

3        Plaintiff promptly complained about this illegal retaliation to Lieutenant Mark

4   Lee, Captain Martin Ticas, and Police Chief Tracy Avelar, none of which took any action

5   whatsoever. Verified Complaint, ₧ 56 and Exhibit C.

6        Verified Complaint thus states both that the policymakers (Lieutenant Mark Lee,

7   Captain Martin Ticas, and Police Chief Tracy Avelar) knew about Defendant Terry's

8   unconstitutional conducts against Plaintiff, took no action to correct them, but in fact

9   attempted to force Plaintiff to dismiss his complaint against Defendant Terry though false

10  statements of their own, and when after learning that Defendant Terry and two other

11  police officers retaliated against Plaintiff, these policymakers (Lieutenant Mark Lee,

12  Captain Martin Ticas, and Police Chief Tracy Avelar) again did nothing to correct the

13  unconstitutional behaviors of their police officers.

14
            **(b).    The Verified Complaint sates a claim based on the theory**
15          **of failure to train**

16       Inadequate training of municipal employees may give rise to Section

17  1983 liability. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). So too can patterns of

18  hiring. *See Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

19       In a case of inadequate training, plaintiffs may allege that a deficient training

20  regime which exists over time and extends to multiple employees. See Brown, at

21  407 (citing Canton, 489 U.S. at 390). Plaintiffs in such cases may point to "a pattern of

22  tortious conduct" by employees as evidence that a regime of inadequate training was the

23  "moving force" behind their injuries. Brown, 520 U.S. at 407-08 (citing Canton, 489 U.S.

24  at 390-91).

25       Here, the Verified Complaint states a pattern of tortious conduct – Defendant

26  Terry's illegal detention of Plaintiff inside his own home, Lieutenant Mark Lee's illegal

27  attempt to force Plaintiff to dismiss the citizen complaint against Defendant Terry (by

28  falsely claiming that Plaintiff's complaint was invalid because it was filed on the wrong

stationeries), three police officers' illegal retaliation of Plaintiff at his home for filing the citizen complaint against Defendant Terry, two other police officers' illegal shooting of Mr. Jowy Roman inside his own home while Mr. Roman was suffering from mental illness, Defendants' fabrication of a police video to false accuse Mr. Roman of resisting arrest, Defendants' pirating of various police policy manuals from the Redding Police Department,  Defendants' false arrest and prosecution, as well as the subsequent destroying the professional career, of Mr. Thomas McMillin whom complained about their misconducts. Verified Complaint, ¶¶ 2, 14-22, 32-43, 44-56.

Drawing every inference in his favor, as the Court is bound to do on a Motion to Dismiss, a history of eight misconducts—involving the similar excessive uses of force, dishonesty, illegal retaliations against Foster City Residents—makes it more than plausible that the City of Foster City and the Foster City Police Department are the moving force behind Plaintiff's injuries because of a pattern of deficient training over time.

Thus, the Verified Complaint states The Verified Complaint sates a claim based on the theory of failure to train.

### (c).    The Verified Complaint sates a claim based on the theory of an unconstitutional custom, practice, or policy

As a threshold matter, the Ninth Circuit has emphasized that "[w]hether a local government has displayed a policy of deliberate indifference to the constitutional rights of its citizens is *generally a jury question*." *Long v. County of Los Angeles*, 442 F.3d 1178 (9th Cir. 2005), citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1194-95 (9th Cir. 2002).

More specifically, Municipalities may be held liable for inaction where that inaction constitutes deliberate indifference to the violation of rights. *See City of Canton*, 489 U.S. at 390 ("But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the

policymakers of the city can reasonably be said to have been deliberately indifferent to the need."). A municipality's unconstitutional custom or practice "can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011).

Here, the Verified Complaint states a widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded – Defendant Terry's illegal detention of Plaintiff inside his own home, Lieutenant Mark Lee's illegal attempt to force Plaintiff to dismiss the citizen complaint against Defendant Terry (by falsely claiming that Plaintiff's complaint was invalid because it was filed on the wrong stationeries and), three police officers' illegal retaliation of Plaintiff at his home for filing the citizen complaint against Defendant Terry, two other police officers' illegal shooting of Mr. Jowy Roman inside his own home while Mr. Roman was suffering from mental illness, Defendants' fabrication of a police video to false accuse Mr. Roman of resisting arrest, Defendants' pirating of various police policy manuals from the Redding Police Department,  Defendants' false arrest and prosecution, as well as the subsequent destroying the professional career, of Mr. Thomas McMillin whom complained about their misconducts. Verified Complaint, ¶¶ 2, 14-22, 32-43, 44-56.

Thus, similar to the failure to train claim, drawing all inferences in Plaintiff's favor, the pattern of prior incidents makes it more than plausible that there may be a widespread practice of excessive force, dishonesty, illegal retaliation, within the City of Foster City and the Foster City Police Department that amounts to a custom, policy, or practice. As with Plaintiff's failure-to-train claim, the fact that prior incidents involve false arrest/detention and retaliation against multiple Foster City residents and using excessive forces against at least two Foster City residents inside their own homes—in combination with all other facts—speaks to this plausibility.

### E.   The Verified Complaint Sufficiently States All Its State Law Claims

#### (a).   The Verified Complaint states a civil battery and assault claim

California courts have fused battery and assault claims and even used the terms interchangeably. *See e.g., McLean v. Colf*, 179 Cal. 237 (1918); *see also Lopez v. Surchia*, 122 Cal.App.2d 314, 318 (1952); *Estrada v. Orwitz*, 75 Ca. App. 2d 54 (1946); *Griswold v. Hollywood Turf Club*, 106 Cal.App.2d 578 (1951).

More substantively, California courts have applied the Penal Code definition of battery in civil battery and assault cases. *See e.g., Bartosh v. Banning*, 251 Cal.App.24 378 (1967); *McChristian v. Popkin*, 75 Cal. App. 2d 249 260 (1946); *Fragualia v. Sala*, 17 Cal.App.2d 738, 742 (1936) (under Cal. Pen. Code § 242, battery is "a willful and unlawful use of force or violence on the person of another").

Battery and assault also occur when a defendant threatens immediate force or violence to coerce a plaintiff to perform certain acts, when the defendant has no right to the plaintiff's performance of these acts.  See *People v. McCoy,* 25 Cal.2d 177, 193 (1944), italics omitted, quoting *People v. McMakin,* 8 Cal. 547, 548–549 (1857).

Here, Defendant Terry "yelled again, demanding Plaintiff come out his own backyard," even though he "had no legal authority to forcibly remove Plaintiff from his own backyard." Verified Complaint, ⁋⁋ 35-36. After Plaintiff refused "Defendant Marcus Terry's illegal demand," Defendant Terry, while in "close proximity to Plaintiff," "suddenly and forcefully pushed open Plaintiff's side door, as Plaintiff was standing behind the side door … almost striking the side door into Plaintiff's face and upper torso" (Verified Complaint, ⁋⁋ 34-36), even though Plaintiff (1) was not even suspected of, let alone committing any crime, (2) posed no immediate safety threat, and (3) was neither resisting nor evading police by flight (*ibid*).

Defendant Terry thus not only threatened, but in fact used both force and violence on Plaintiff, when Plaintiff refused Defendant Terry's illegal demand that Plaintiff come

out of his own backyard for an early morning road-side police interrogated by Defendant Terry, which Defendant Terry had no right to interrogate Plaintiff at all.

Further, for at least reasons explained above, Defendant Terry used constitutionally excessive force to coerce this immediate police interrogation.

Thus, the Verified Complaint states a civil battery and assault claim under California law.

### (b).    The Verified Complaint sates an intentional infliction of emotional distress claim

Defendants challenge only the outrageousness aspect of the intentional infliction of emotional distress claim, calling Defendants conducts reasonable or at least not outrageous. Mot. To Dismiss, at 16.

Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress. (*Prosser, Law of Torts* (4th ed. 1971), at pp. 57-58; *Rest.2d Torts*, § 46, coms. e, f; *Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493, at 496 (1970) (supervisor shouting insulting epithets; terminating employment; humiliating plaintiff; *Golden v. Dungan*, 20 Cal.App.3d 295, at 305 (1971) (process server knowingly and maliciously banging on door at midnight).

Here, Defendants conducts were outrageous. Defendant Terry used his position as a police officer, which gave him power, and acted intentionally and unreasonably with the recognition that his acts are likely to result in Plaintiff suffering illness through mental distress by first unlawfully detaining Plaintiff inside his own home, almost striking Plaintiff's face and upper torso by forcefully pushing open Plaintiff's backyard door, pretending to conduct a 911-welfare check, depriving Plaintiff's two minor children of any adult care, and then "act[ing] in concert [with three other police officers] to illegally retaliated against Plaintiff for filing the citizen complaint against [him] a few

days ago" by "ostensibly conduct[ing] a warrant check" at Plaintiff's home "[t]wo hours after."  Verified Complaint, ¶¶ 35-41, 44-50.

Further, Defendants, for at least the third time, challenge the truth of the allegations made in the Verified Complaint by claiming that the warrant check was legitimate, when the Verified Complaint states "this claimed warrant check was FCPD's effort to retaliate against Plaintiff." *Id.*, ¶ 52. Such attempts are inappropriately in a Rule 12(b)(6) motion to dismiss, in which, absent certain judicially noticeable facts (of which Defendants presented none) the moving party and the court "must assume the truth of all factual allegations." *Thompson*, at 895.

### (c).   The Verified Complaint sates a violation of Bane Act claim

#### i)   The Verified Complaint establishes numerous violations of stator and constitutional rights.

Recycling their previous arguments, Defendants claim that "there is no evidence that Defendants interfered with or violated any legal right possessed by Plaintiff. Where there is no violation of statutory or constitutional rights, there is no basis for a claim pursuant to Civil Code § 52.1." Mot. to Dismiss, at 17.

To the contrary, the Verified Complaint states, among others, "[t]he civil rights of Plaintiff—specifically his Fourth Amendment right to be free from unreasonable seizure of his person and his Fourteenth Amendment substantive due process right to life and liberty—were violated when Defendant Marcus Terry illegally detained Plaintiff inside his own home without reasonable suspicion or probable cause and illegally retaliated against Plaintiff for lawfully complaining about his misconducts." Verified Complaint, ¶ 80.

The Verified Complaint thus states a violation of Bane Act claim.

#### ii)   The Verified Complaint states numerous threats, intimidations and coercions made by Defendants against Plaintiff

Defendants argue that (1) "the Bane Act 'requires a showing of threatening conduct independent from the alleged interference or violation of a civil right'" and (2) "in present case, there is no evidence that TERRY engaged in a form of threat, intimidation or coercion beyond the alleged violation of constitutional rights." Mot. To. Dismiss, at 18.

In fact, the Verified Complaint states (1) Defendant Terry used his position as a police officer, first unlawfully detaining Plaintiff inside his own home, almost striking Plaintiff's face and upper torso by forcefully pushing open Plaintiff's backyard door, pretending to conduct a 911-welfare check, depriving Plaintiff's two minor children of any adult care, and (2) then "act[ing] in concert [with three other police officers] to illegally retaliated against Plaintiff for filing the citizen complaint against [him] a few days ago" by "ostensibly conduct[ing] a warrant check" at Plaintiff's home "[t]wo hours after."  Verified Complaint, ¶¶ 35-41, 44-50.

Put concisely, Defendant Terry first unlawfully detained Plaintiff in violation of his various constitutional rights, and then retaliated against Plaintiff for reporting Defendant Terry's violation of Plaintiff's constitutional rights by conducting a fake warrant check to intimate Plaintiff. Defendant Terry's retaliation against Plaintiff is independent from and beyond Defendant Terry's illegal detention of Plaintiff inside his own house.

In sum, the Verified Complaint states a claim under Cal. Civil Code § 52.1.

### (d).    The Verified Complaint sates a negligent use of force claim

Adding nothing new, Defendants repeats their prior assertion that Defendant Terry used only reasonable force (Mot. to Dismiss, at 18), an assertion better reserved for a jury.  *See Smith*, at 701(observing that excessive force cases "almost always turn on a jury's credibility determinations").

To the contrary, the Verified Complaint states that Defendant Terry used unreasonable force. Because "Plaintiff did not cave to Defendant Marcus Terry's illegal demand," Defendant Terry, while in "close proximity to Plaintiff," "suddenly and

forcefully pushed open Plaintiff's side door, as Plaintiff was standing behind the side door … almost striking the side door into Plaintiff's face and upper torso" (Verified Complaint, ¶¶ 34-36), even though Plaintiff (1) was not even suspected of, let alone committing any crime, (2) posed no immediate safety threat, and (3) was neither resisting nor evading police by flight (*ibid*).

In sum, the Verified Complaint states a negligent use of force claim.

### (e).  The Verified Complaint sates a negligent intentional infliction of emotional distress claim

Here, Defendants, for at least the fourth time, inappropriately rejected the truth of the allegations made in the Verified Complaint by claiming Defendant's illegal detention was "brief" and the subsequent warrant check was "reasonable" (Mot. To Dismiss, at 20), whereas the Verified Complaint states Defendant Terry "endanger[ed] the welfare of Plaintiff's minor children by illegally detaining Plaintiff on the false ground of investigating a 911 welfare call, which, as explained above, Defendant Marcus Terry made zero efforts doing" and the "claimed warrant check was FCPD's effort to retaliate against Plaintiff." *Id.*, ¶¶ 41, 52.

The Verified Complaint thus states a negligent intentional infliction of emotional distress claim: Defendant Terry used unreasonable force against Plaintiff, harming Plaintiff. *See Price v. Cty. of San Diego*, 990 F.Supp. 1230, 1245 (S.D.Cal. 1998) (citation omitted).

### (f).  The Verified Complaint States a statutory basis for all his State Law claims against the City of Foster City and Foster City Police Department

Plaintiff's state law claims of battery, intentional infliction of emotional distress, negligent use of force, and negligent infliction of emotional distress allege that "knowingly acted without immunity and within the course and scope of their employment with defendants Foster City and/or FCPD." Verified Complaint, ¶¶ 104, 118, 127, 135.

Cal. Gov. Code § 815.2 prescribes that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

1   scope of his employment if the act or omission would … have given rise to a cause of

2   action against that employee or his personal representative.

3       Cal. Gov. Code § 815.4 prescribes that "[a]  public entity is liable for injury

4   proximately caused by a tortious act or omission of an independent contractor of the

5   public entity to the same extent that the public entity would be subject to such liability if

6   it were a private person."

7       The verified Complaint states at least two theories for liability against Defendant

8   the City of Foster City and Foster City Police Department: vicarious liability for their

9   employees and failure to train. Verified Complaint, ¶¶ 86-94, 104, 118, 127, 135.

10

11          **F.    The Verified Complaint states numerous basis for its Punitive
                    Damage Claim**

12      In § 1983 cases, punitive damages are recoverable "when the defendant's conduct

13  is shown to be motivated by evil motive or intent, or when it involves reckless or callous

14  indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56

15  (1983); see *Dang v. Cross*, 422 F.3d 800, 809 (9th Cir. 2005) ("Conduct is in reckless

16  disregard of the plaintiff's rights if, under the circumstances, it reflects complete

17  indifference to the plaintiff's safety, rights, or the defendant acts in the face of a perceived

18  risk that its actions will violate the plaintiff's rights under federal law."); *Morgan v.*

19  *Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993).

20      Section 1983 punitive damages can also be awarded to address "malicious,

21  wanton, or oppressive acts or omissions." *Dang v. Cross*, 422 F.3d 800, 809 (9th Cir.

22  2005).

23      Similarly, under California law, punitive damages are recoverable based on

24  Defendants' "oppression, fraud, or malice." *Cal. Civ. Code* § 3294(a).  Malice includes

25  defined as either conduct "intended by the defendant to cause injury … or despicable

26  conduct which is carried on by the defendant with a willful and conscious disregard of

27  the rights or safety of others." *Cal. Civ. Code* § 3294(a)(1). Oppression includes

28

1    "despicable conduct that subjects a person to cruel and unjust hardship in conscious

2    disregard of that person's rights." *Cal. Civ. Code* § 3294(a)(2).

3         Here, the Verified Complaint states that because "Plaintiff did not cave to

4    Defendant Marcus Terry's illegal demand," Defendant Terry, while in "close proximity

5    to Plaintiff," "suddenly and forcefully pushed open Plaintiff's side door, as Plaintiff was

6    standing behind the side door … almost striking the side door into Plaintiff's face and

7    upper torso" (Verified Complaint, ¶¶ 34-36), even though Plaintiff (1) was not even

8    suspected of, let alone committing any crime, (2) posed no immediate safety threat, and

9    (3) was neither resisting nor evading police by flight (*ibid*).

10        The Verified Complaint further states (1) Defendant Terry used his position as a

11   police officer, first unlawfully detaining Plaintiff inside his own home, almost striking

12   Plaintiff's face and upper torso by forcefully pushing open Plaintiff's backyard door,

13   pretending to conduct a 911-welfare check, depriving Plaintiff's two minor children of

14   any adult care, and (2) then "act[ing] in concert [with three other police officers] to

15   illegally retaliated against Plaintiff for filing the citizen complaint against [him] a few

16   days ago" by "ostensibly conduct[ing] a warrant check" at Plaintiff's home "[t]wo hours

17   after."  Verified Complaint, ¶¶ 35-41, 44-50.

18        Thus, Verified Complaint sufficient facts under both § 1983 and *Cal. Civ. Code* §

19   3294(a) to recover punitive damages.

20

21        **G.    Amendments are not needed and if needed should be liberally
              granted.**

22        A dismissal for failure to state a claim is appropriate only where it appears,

23   beyond doubt, that the plaintiff can prove no set of facts that would entitle him or her to

24   relief. *Morley* at 759.  Pro se litigants should be granted leave to amend unless it is

25   absolutely clear that the deficiencies cannot be cured by amendment. *See Lopez*, 1130-31.

26        ///

27        ///

28        ///

III.     **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully request the court deny Defendants'
motion to dismiss Plaintiff's Verified Complaint or alternatively grant lead to amend.


April 26, 2021          Respectfully submitted,




by _____

Zheng Liu, *Pro Se*

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**